IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **NYDIA ENID SOTO QUIÑONES; JOSE LUIS TORRES PEREZ**<br><br>Plaintiffs<br><br>v.<br><br>**PUERTO RICO ELECTRIC POWER AUTHORITY**; **JORGE F. HERNANDEZ PEREZ** in his personal an official capacity, his wife **ZORAIDA FUENTES MOURE** and their conjugal partnership; **JUAN ALICEA FLORES** in his personal an official capacity, his wife **JANE DOE** and their conjugal partnership; **VICTOR M. OPPENHEIMER SOTO** in his personal an official capacity, his wife **JANE ROE** and their conjugal partnership; **MARIA M. MENDEZ RIVERA** in her personal an official capacity, her husband **IDELFONSO LOPEZ MORALES** and their conjugal partnership; **MANUEL PEREZ SOLER** in his personal an official capacity, his wife **MARIA TERESA ADAMES AQUINO** and their conjugal partnership; **ANGEL FIGUEROA JARAMILLO** in his personal an official capacity, his wife **JANE DOE** and their conjugal partnership; **ALFONSO VILLAFAÑE** in his personal an official capacity, his wife **JANE DOE** and their conjugal partnership; **JOHN DOE**, his wife, **JANE DOE** and their conjugal partnership; **INSURANCE COMPANIES A, B and C**<br><br>Defendants | CIVIL NO.<br><br>RE:  Civil Rights Violations<br>       Preliminary Injunction<br>       Damages<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiffs, NYDIA ENID SOTO QUIÑONES ("Nydia") and JOSE LUIS TORRES PEREZ ("Jose"), by and through its counsel, complaining of Defendants and respectfully state, allege and pray as follows:

## I. NATURE OF ACTION, JURISDICTION AND VENUE

1.1 The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 in so far as there are causes of action that arise under the Constitution of the United Sates and Federal Law, particularly 42 U.S.C. §§ 1983, 1988, as amended, and the First, Fifth and Fourteenth Amendments of the United States Constitution. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1367 for causes of action arising under Puerto Rico State Law, such as Sections 1, 4 and 7 of Article 2 of the Puerto Rico Constitution, Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, and 32 L.P.R.A. § 3115.

1.2 Venue is properly made in this District under 28 U.S.C. §1391 in so far as the events and/or omissions giving rise to the claims at issue occurred within this district and all Defendants reside in Puerto Rico.

1.3 This claim is to recover emotional and moral damages suffered by the Plaintiffs and caused by the Defendant as a result of intentional and discriminatory actions taken against the Plaintiffs. Injunctive relief is requested in order for Plaintiffs to be reinstated in their positions in the Puerto Rico Electric Power Authority (PREPA).

1.4 Defendants conspired to remove Nydia and Jose from their respective positions in PREPA, just because they were affiliated with the New Progressive Party (NPP). Not only were they discriminatorily removed from their jobs, Defendants, all of which are affiliated with the Popular Democratic Party (PDP), set out on a mission to tarnish Jose and Nydia's reputation by coercing several PREPA employees to give false statements against them, spreading false information in PREPA and through radio commentaries.

1.5 Jose and Nydia have suffered irreparable harm by the Defendants unconstitutional actions. They have suffered severe mental stress and anguish, their reputation has been maliciously lacerated, and they've been deprive of their salaries and benefits, such as medical insurance.

1.6    Defendants conspired to remove 20 career employees, all members of the "Union de Trabajadores de la Insdustria Electrica y Riego" (UTIER), with the intent of coercing them into giving false statements against Jose, Nydia and another supervisor in exchange for them getting their jobs back. Among the 20 employees that were removed for said purpose, there was Mr. Orlando Olivencia de Jesus and Mr. Jose Marcelo Rivera Ramirez. Mr. Olivencia declined the Defendants offer to testify against his supervisors. Mr. Rivera, who is more politically active in the NPP, wasn't even offered the option to get his job back. Mr. Olivencia and Mr. Rivera filed a joint complaint against Defendants on November 6, 2013, case of Orlando Olivencia, et al. v. PREPA, et al., #3:13-cv-01844-JAF.

1.7    Plaintiff are likely to prevail in this case due to the clear discriminatory treatment they received. They were removed from their position even though the alleged reasons for their removal were unfounded and unjustified. This was a deliberate attack against a group of career employees that were affiliated to the NPP.

1.8    The granting of a preliminary injunction serves the public interest, because the Plaintiffs have a right to be reinstated in their positions and the unconstitutional behavior of Defendants can't be condoned, especially given the fact that PREPA's former executive director, Miguel Cordero, admitted publicly that PREPA fabricated cases against employee of different political ideologies.

1.9    Jury trial is demanded on all issues so triable.

## II. THE PARTIES

2.1    Plaintiff, Jose Luis Torres Perez, is of legal age, a United States citizen, married and a resident of Puerto Rico. At all times material hereto, Jose was protected by the laws of the United States of America and the laws of Puerto Rico. At all times material hereto, Jose has been an active member of the NPP and an active member of "Energéticos Estadistas".

2.2     Plaintiff, Nydia Enid Soto Quiñones, is of legal age, a United States citizen, single and a resident of Puerto Rico. At all times material hereto, Nydia was protected by the laws of the United States of America and the laws of Puerto Rico. At all times material hereto, Nydia has been an active member of the NPP, an active member of "Energéticos Estadistas" and a member of NPP's Blue Circle.

2.3     Defendant, Puerto Rico Electric Power Authority (PREPA), is a Puerto Rico public corporation and has been brought as defendant for the purpose of injunctive relief.

2.4     Defendant, Juan Alicea Flores is the executive director of PREPA and is sued in his personal and official capacity for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so that they could be replaced with members of the PDP. Mr. Alicea is an active member of the PDP.

2.5     Upon information and belief, at all times material hereto Jane Doe, was the wife of Mr. Alicea and the two of them form a conjugal partnership which is liable for the actions of Mr. Alicea.

2.6     Defendant, Victor Oppenheimer Soto is PREPA's Labor Relation Director and is sued in his personal and official capacity for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so that they could be replaced with members of the PDP. Mr. Oppenheimer is a member and active member of the PDP and "Energía Popular", an political organization within PREPA affiliated to the PDP.

2.7     Upon information and belief, at all times material hereto Jane Roe, was the wife of Mr. Oppenheimer and the two of them form a conjugal partnership which is liable for the actions of Mr. Oppenheimer.

2.8   Defendant, Maria Mendez Rivera is the Secretary of PREPA's Board of Directors and PREPA's Human Resources Director, and is sued in her personal and official capacity for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so that they could be replaced with members of the PDP. Ms. Mendez also made defamatory remarks about the Plaintiff in a radio program in "Noti Uno". Ms. Mendez is a member and active member of the PDP and, upon information and belief, she is the primary liaison between "Fortaleza" and PREPA.

2.9   Upon information and belief, at all times material hereto Idelfonso Lopez Morales, was the husband of Ms. Mendez and the two of them form a conjugal partnership which is liable for the actions of Ms. Mendez.

2.10   Defendant, Manuel Perez Soler is sued for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so that they could be replaced with members of the PDP. Mr. Perez, together with Mr. Figueroa Jaramillo, coerced the UTIER members to give false statements against the Plaintiffs. Mr. Perez is a member and active member of the PDP and was a city council member for the municipality of Isabela as a representative of the PDP.

2.11   Upon information and belief, at all times material hereto Maria Adames Aquino, was the wife of Mr. Perez and the two of them form a conjugal partnership which is liable for the actions of Mr. Perez.

2.12   Defendant, Angel Figueroa Jaramillo is the President of the UTIER and is sued for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so

that they could be replaced with members of the PDP. Mr. Figueroa, together with Mr. Perez, coerced the UTIER members to give false statements against the Plaintiffs. Mr. Figueroa is a member and active member of the PDP.

2.13   Upon information and belief, at all times material hereto Jane Doe, was the wife of Mr. Figueroa and the two of them form a conjugal partnership which is liable for the actions of Mr. Figueroa.

2.14   Defendant, Alfonso Villafañe is sued in his personal and official capacity for conspiring with the other defendants to violate Jose and Nydia's constitutional rights by removing them from their respective positions in PREPA. Jose and Nydia were summarily removed for their employment without pay of benefits, just because the belonged to the NPP, so that they could be replaced with members of the PDP. Mr. Villafañe, conspired to remove documents from Nydia's office and create a frivolous case against the Plaintiffs. Mr. Villafañe is a member and active member of the PDP.

2.15   Upon information and belief, at all times material hereto Jane Doe, was the wife of Mr. Villafañe and the two of them form a conjugal partnership which is liable for the actions of Mr. Villafañe.

2.16   Defendants, Insurance Companies A, B and C are one or more unidentified insurance companies that have issued and, at all times material hereto, had in effect insurance policies in favor of one or more of the Defendants for the risks of the actions stated in this Complaint.

2.17   Defendants, Jane and John Doe and/or their representatives and/or their conjugal partnerships, are natural or legal persons liable for the damages suffered by Jose and Nydia, but whose identities are unknown.

2.18   In all moments hereinafter, the term "Defendants" shall include Mr. Alicea, Mr. Oppenheimer, Ms. Mendez, Mr. Perez, Mr. Figueroa and Mr. Villafañe.

## III. FACTS COMMON TO ALL COUNTS

### A. Nydia Enid Soto Quiñones:

3.1    Nydia has been a PREPA employee for over 20 years. During the two years prior to her suspension she was he Manager for the Commercial District of Isabela. She was the only woman manager in her district and the only one who was affiliated to the NPP.

3.2    Nydia is an active member of the NPP. She is also a member of "Energeticos Estadistas", has participated in the campaign process on behalf of the NPP, served as a poll watcher during past elections for the NPP, and she is a member of the Blue Circle of the NPP.

3.3    Almost every employee in PREPA is a member of, either "Energeticos Estadistas" or "Energia Popular", which causes that the employee's political affiliation to be common knowledge.

3.4    All Defendants were aware of Nydia's political affiliation.

3.5    All Defendants are affiliated to an opposing political party than that of the Plaintiffs. In other words, members of the PDP.

3.6    On February, 2013, codefendant Jorge Hernandez was appointed as Commercial Operation Regional Administrator for the Region of Arecibo. His appointment to said position was due to the change of the controlling government party, in this case the PDP began their administration on January of 2013.

3.7    Around that time, due to different circumstances with the other supervisors, the Isabela office was practically being charge by Nydia, Jose and Mr. Jose Feliciano, who is also a member of the NPP and was removed from his job.

3.8    At the beginning of Mr. Hernandez time in his new position, his relationship Nydia and Jose was cordial and professional.

3.9  Among the projects handled by Mr. Hernandez, there was one for the collection of overdue invoices. This was a very big project for that region, which required a lot of man hours.

3.10  Mr. Hernandez gave the instructions as to what task he wanted performed, including matters of employee schedules and overtime.

3.11  Nydia informed Mr. Hernandez that her vacation time was programmed for the month of July. Mr. Hernandez told her that he could not approve the full vacation period due to the lack of managerial staff.

3.12  Mr. Hernandez approved Nydia's vacation from July 9 to July 26.

3.13  Nydia and Mr. Hernandez agreed that she would be substituted during her vacation period by Mr. Alfonso Villafañe.

3.14  Before leaving for her vacations, Nydia made all the necessary arrangements with Mr. Villafañe for him to be able to be in charge of the district, including handing him documents relative to the district and pending tasks.

3.15  On July 18, Nydia went to the office to pick up her paycheck. It was then when Ms. Maritza Santiago informed her that Mr. Hernandez, Mr. Villafañe, Ms. Elsa Machado and Ms. Anicet Ruiz, how was an Corporate Security Official, had been in her office and had retrieved several documents without signing any type of acknowledgment of receipt.

3.16  The documents that were removed from Nydia's office were payrolls, security guard registry and other documents pertening to the district.

3.17  Nydia was also informed that Mr. Alfonso Villafañe was replaced and that Mr. Hernandez had appointed Mayra Grajales to be in charge of the district.

3.18  Nydia inquired if any Official from the Audit Office had been present. She was told that no one from that office had come by and that there had been no notification that an audit was being conducted.

3.19   Nydia was supposedly not informed of the situation because they did not want to interrupt her vacations.

3.20   On July 29, 2013, Nydia returned to work. To her surprise, neither Mr. Villafañe or anyone else, was present to return to her the control of the district or discuss the result of the supposed investigation performed in her absence.

3.21   On August 5, 2013, Nydia sent an e-mail to Mr. Hernandez because she was concerned that Mr. Villafañe had not given his report of the tasks that were performed in her absence or any outstanding issues. Mr. Hernandez did not reply.

3.22   Rumors began to spread in the office that Mr. Hernandez had said that he was going to fire over 20 employees, that he going to clean Isabela.

3.23   During the following weeks after Nydia's return to the office, Mr. Hernandez avoided all contact with her and conferred with other supervisors if he needed something.

3.24   As a result of Mr. Hernandez strange behavior, Nydia sent him a memo on August 14, 2013.

3.25   In the memo, Nydia requested information about what was going on. She also informed him of her concern regarding the fact that they had taken advantage of her absence to remove documents from her office without any acknowledgment of it.

3.26   Nydia copied the memo to Ms. Emilia Marte, Customer Service Director, Mr. Rolando Sepulveda Arzola, Regional Administrator, Mr. Pedro Rodriguez Cintron, Internal Audit Administrator and Mr. Victor Oppenheimer.

3.27   None of the people replied to the memo, which led Nydia to believe that they were all aware of the situation and had taken part in it.

3.28   On August 19, 2013, Nydia received a call from Mr. Hernandez, who told her that he was on his way to Isabela and he wanted to meet with the staff.

3.29   Mr. Hernandez arrived with Ms. Anicet Ruiz, Mr. Manuel Perez and Mr. Luis Velazquez, a Corporate Security Official from the Bayamon Region.

3.30   Mr. Hernandez told Nydia that he was there to give her a document that stated that she was suspended without pay. Mr. Hernandez requested that she signed the letter, but Nydia refused.

3.31   Nydia was then asked to hand over her ID and the office keys, and immediately abandon the premises.

3.32   One of the reasons for Nydia's suspension was a supposed tardiness pattern, however Nydia just had the obligation to state whether she was present or not, since she did not received an hourly wage. Furthermore, she had never been given a warning or had been admonished because of this supposed pattern.

3.33   The supposed tardiness pattern was based on the information provided by the security guards logs.

3.34   In July 2011, Alberto Cuevas, then the Interim Labor Relations Director, had issued a written opinion that the security guards logs from the parking lot could not be used as basis for a disciplinary action against an employee. The main reason was that this logs were unreliable.

3.35   On July 2013, PREPA supervisors had to meet with the private security company that kept the logs, because there were discrepancies between the logs and the facts.

3.36   The supposed events that were based on the security logs were all prior to July 2013.

3.37   Just a few months before the suspension, Mr. Jorge Hernandez had signed Nydia's performance evaluation, in which it was stated that she hadn't been tardy or absent.

3.38   Nydia has not received her income, was deprived of all her benefits, including medical insurance and Christmas bonus.

3.39   Nydia was replaced by Mr. Carlos Arroyo, who is a member of the PDP and an active member of "Energia Popular".

**B. Jose Luis Torres Perez:**

3.40    Jose has been a PREPA employee for over 20 years. During the two years prior to his suspension he was a Technical Service Supervisor.

3.41    Jose is an active member of the NPP. He is also a member of "Energeticos Estadistas", has participated in the campaign process on behalf of the NPP, served as poll watcher during past elections for the NPP.

3.42    All Defendants were aware of Jose's political affiliation.

3.43    Jose had also taken his vacation time during the month of July 2013.

3.44    Upon his return from his vacations he resumed working as usual.

3.45    On August 19, 2013 he arrived at work around 7:00am, as he was accustomed. He prepared the work he would hand out to the technical service staff he supervised.

3.46    Jose received a call from Nydia, in which she told him not to send his employees to the field, because Mr. Hernandez was on his way to the office to meet with the staff.

3.47    Jose instructed his staff not to leave, but he continued to hand out the tasks and coordinate the job routes.

3.48    At about 8:30am Jose was asked to go to the empty office next to Nydia's office.

3.49    In said office he was met by Mr. Hernandez, who was accompanied by Mr. Perez, Ms. Ruiz and Mr. Luis Velazquez.

3.50    It was then that Jose received a letter, that Mr. Hernandez had told him that he was suspended, but Jose did not open the letter at the time.

3.51    Mr. Hernandez told Jose that the content of the letter was not up for discussion and he was requested to sing it, but he refused.

3.52    Jose was told to abandon the premises immediately, so he took what he could, given his emotional state, and abandoned the building.

11

3.53   On his way out, Jose noticed various nervous employees waiting to meet with Mr. Hernandez. Some of them asked him what had happened and he told them that he had been fired.

3.54   Jose later opened the letter and was surprised to find out that he was being accused of basically being a criminal.

3.55   Jose has not received his income, was deprived of all his benefits, including medical insurance and Christmas bonus.

3.56   Jose was in the process of buying a new house, but since he was fired the bank declined his request for a loan.

3.57   Upon information and belief, Jose's position has not been officially filled to this date.

## C. Coercion of UTIER employees

3.58   Reference is made to the Complaint filed by Orlando Olivencia and Jose Rivera against Defendants on November 6, 2013, case of <u>Orlando Olivencia, et al. v. PREPA, et al.</u>, #3:13-cv-01844-JAF.

3.59   On August 19, 2013, after Nydia and Jose had already been suspended, Mr. Olivencia and Mr. Rivera, along with over a dozen other union employees, where told to go to the office where Mr. Hernandez was waiting for them. There were some employees that could not go to the office, like Oscar Colon, who was in a wheelchair and couldn't go up to the second floor, other workers on the list were not present.

3.60   Before entering the office, Mr. Olivencia and Mr. Rivera had learned that Jose and Nydia had already been fired.

3.61   Just like the case of Jose and Nydia, each employee that was cited, was given a letter suspending them from their job and accusing them of tardiness, theft, fraud, etc.

3.62 The fired UTIER employees were notified of a meeting with the UTIER to be held on that same day at 5:00pm.

3.63 Mr. Olivencia tried to get in touch with Mr. Figueroa Jaramillo before the meeting, because he had talked to Nydia and they had information that could absolve all of them.

3.64 Mr. Figueroa Jaramillo did not show any interest in the evidence and stated that he didn't want Nydia at the meeting.

3.65 Nydia had evidence of PREPA's insatisfaction with the security guards record keeping all the way up to July 2013, because the time entries were not accurate and the entry of some vehicles wasn't recorded. All the accusations against the employees and the Plaintiffs were based on recordkeeping prior to July 2013.

3.66 Also, upon information and belief, PREPA supervisors from the PDP altered records to benefit several PDP union workers.

3.67 During the UTIER meeting, Mr. Figueroa Jaramillo admitted that he knew of the dismissals several weeks beforehand.

3.68 Mr. Figueroa told the employees that the UTIER would not get them lawyers and that private lawyers ruined cases. Furthermore, he advised the union employees to not say anything in their informal hearings and that they should wait for their formal hearings instead.

3.69 Mr. Figueroa Jaramillo proceeded to intimidate the workers bay advising them to settle quickly; that they were facing criminal charges; and that the media shouldn't be notified.

3.70 Mr. Figueroa, the President of the Union, said that he was going to meet with Victor Oppenheimer and that he had to accept whatever he offered.

3.71 The offer made by Victor Oppenheimer was that the employees would be reinstated to their jobs in exchange for giving sworn statements against Jose and Nydia.

3.72 All of the employees accepted the offer, with the exception of Olivencia, because of the pressure put on them by PREPA's senior staff and the UTIER representatives. Mr. Rivera was not offered a settlement.

3.73   The details of the coercion experienced by Olivencia, Rivera and the other union workers is detailed in their complaint. (Exhibit 1)

## IV. FIRST COUNT
### (Civil Rights Violation and Due Process Violation under the United States Constitution)

4.1   Plaintiffs incorporate its previous averments, by reference.

4.2   Defendants engaged in discriminatory, illegal practices in order to deprive Nydia and Jose of their employment.

4.3   Defendants acted as investigators, auditors, judges, jury and executioners in order to remove the supervisors from the NPP to be replaced by members of the PDP.

4.4   Defendants refused to consider exculpatory evidence and acted upon politically discriminatory motivations.

4.5   Nydia and Jose have a property interest in their jobs, especially because both of them were career employees and had worked at PREPA for over 20 years.

4.6   As a result, Jose and Nydia have suffered emotional and economic damages, and are entitled to compensation and punitive damages from the Defendants in the amount of no less than $1,000,000.00 each, plus interest, cost and attorney fees.

4.7   Jose and Nydia demand to be immediately reinstated in their positions.

## V. SECOND COUNT
### (Due Process Violation under the Puerto Rico Constitution)

5.1   Plaintiffs incorporate its previous averments, by reference.

5.2   In accordance with the events previously alleged, Defendants deprived Nydia and Jose of their property without due process.

5.3   For this, Jose and Nydia are entitle to compensation under the Puerto Rico Constitution for their emotional and economical damages. Defendants are responsible for the damages suffered by the Plaintiffs which amount to no less than $1,000,000.00 each.

## VI. THIRD COUNT
### (First Amendment Violation)

6.1   Plaintiffs incorporate its previous averments, by reference.

6.2   Defendants violated Nydia and Jose's First Amendment rights by discriminating against them for their political beliefs and for associating with the NPP, to the extent that this discriminatory conduct was the motivation from depriving them from their jobs.

6.3   Jose and Nydia are entitled to compensation from Defendants for punitive, emotional and economic damages, in the amount of no less than $1,500,000.00 each.

## VII. FOURTH COUNT
### (Political and Association Discrimination under the Puerto Rico Constitution)

7.1   Plaintiffs incorporate its previous averments, by reference.

7.2   Defendants violated Nydia and Jose's rights under the Puerto Rico Constitution by discriminating against them for their political beliefs and for associating with the NPP, to the extent that this discriminatory conduct was the motivation from depriving them from their jobs.

7.3   Furthermore, Defendants engaged in a defamatory campaign against Nydia and Jose. Defendants spread information inside PREPA that Plaintiffs stole from PREPA, committed fraud and other false accusations. This information was further spread on a radio program in "Noti UNO".

7.4   Jose and Nydia are entitled to compensation from Defendants for punitive, emotional and economic damages, in the amount of no less than $1,000,000.00 each.

## VIII. FIFTH COUNT
### (Damages under Article 1802 of the Puerto Rico Civil Code)

8.1   Plaintiffs incorporate its previous averments, by reference.

8.2   Jose and Nydia have suffered emotional, economic and moral damages, mental anguish, defamed, harassed and abused at the hands of the Defendants.

8.3   Defendants, through their acts and omissions have caused said damages, which is why they are responsible for compensating Jose and Nydia. The damages amount to no less than $1,000,000.00 each.

WHEREFORE, Plaintiffs, respectfully requests the Honorable Court to grant this Complaint and order the Defendants, jointly and severally, to provide as follows:

A. Order PREPA to reinstate Jose and Nydia to their positions.

B. Order Defendants to, jointly and severally, pay Jose and Nydia the amount of no less than $1,000,000.00 each, plus interests, benefits, costs and attorney fees, as per the First Count of this Complaint.

C. Order Defendants to, jointly and severally, pay Jose and Nydia the amount of no less than $1,000,000.00 each, plus interests, benefits, costs and attorney fees, as per the Second Count of this Complaint.

D. Order Defendants to, jointly and severally, pay Jose and Nydia the amount of no less than $1,500,000.00 each, plus interests, benefits, costs and attorney fees, as per the Third Count of this Complaint.

E. Order Defendants to, jointly and severally, pay Jose and Nydia the amount of no less than $1,000,000.00 each, plus interests, benefits, costs and attorney fees, as per the Fourth Count of this Complaint.

F. Order Defendants to, jointly and severally, pay Jose and Nydia the amount of no less than $1,000,000.00 each, plus interests, benefits, costs and attorney fees, as per the Fifth Count of this Complaint.

G. Order Defendants to desist any other discriminatory practice in the future.

H. Grant such order and relief that may be just and proper.

RESPECTFULLY SUBMITTED

In San Juan, this __th day of December, 2013.

MORALES SBERT LAW OFFICE
Attorney for PLAINTIFFS
Edificio de Asociación de Maestros
452 Ave. Ponce de León, Suite 514
San Juan, PR 00918
Tel. 787-503-2801
E-mail: mgm@moralessbert.com

Marcos G. Morales-Sbert
USDC-PR No. 230604

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Nydia Enid Soto Quiñones, of legal age, single, and a resident of Lares, Puerto Rico, a District Manager under penalty of perjury that the facts in the above Complaint are true.

_____
Nydia Enid Soto Quiñones


I, Jose Torres Perez, of legal age, married, and a resident of Camuy, Puerto Rico, a Technical Services Supervisor under penalty of perjury that the facts in the above Complaint are true.

_____
Jose Torres Perez