**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

NYDIA ENID SOTO QUIÑONES, ET AL.,

     Plaintiffs,

        v.

PUERTO RICO ELECTRIC POWER
AUTHORITY, ET AL.,

     Defendants.

Civil No. 13-1901 (PG)

---

## OMNIBUS OPINION AND ORDER

    Plaintiffs Nydia E. Soto Quiñones ("Soto") and Jose Luis Torres Perez ("Torres")(collectively, "Plaintiffs") filed the instant action against their former employer, the Puerto Rico Electric Power Authority ("PREPA"), and its employees Juan Alicea Flores, Victor Oppenheimer Soto, Maria Mendez, Jorge Hernandez Perez, and Alfonso Villafañe (the "PREPA Defendants"), and two members of the Unión de Trabajadores de la Industria Eléctrica y de Riesgo ("UTIER"), Angel Figueroa Jaramillo and Manuel Perez Soler (the "UTIER Defendants")(all of whom will be collectively referred to as the "Defendants"),[1] alleging violations of the First, Fifth and Fourteenth Amendments to the United States Constitution, and of Puerto Rico law. See Docket No. 5. Plaintiffs claim that Defendants conspired among themselves to remove Plaintiffs from their employment at PREPA solely because of their political affiliation to the New Progressive Party ("NPP"). Id. at p. 2 Plaintiffs seek injunctive relief, as well as compensatory damages pursuant to Section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, and Puerto Rico law.[2] Id.

    Before the Court is PREPA Defendants' Motion for Summary Judgment (Docket No. 59), which the PREPA Defendants in their individual capacities joined (Docket Nos. 61 & 67), the UTIER Defendants' Motion for Summary Judgment (Docket No. 63), and Plaintiffs' Opposition thereto (Docket Nos.

---

[1] The PREPA Defendants are sued in their official and individual capacity. See Docket No. 5 at pp. 4-5.

[2] Plaintiffs invoked the Court's supplemental jurisdiction over the claims arising under Article II, §§ 1, 4 and 7 of the Puerto Rico Constitution, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, and Puerto Rico's Libel and Slander Law, P.R. Laws Ann. tit. 32, § 3145.

80 & 81).[3] After a close examination of all of the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS** the Defendants' Motions for Summary Judgment for the reasons explained below.

## I.   STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "When the party who bears the burden of proof at trial is faced with a properly constituted summary judgment motion, defeating the motion depends on her ability to show that such a dispute exists." Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir.2014)(citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir.2010)).

If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The court reviews the record "as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

---

[3] The UTIER Defendants recently filed their reply to Plaintiffs' opposition. See Docket Nos. 90 & 91.

## II.   FACTUAL FINDINGS[4]

### *The Defendants*

In order to provide some context, the Court gleans the following facts from Plaintiffs' amended complaint. See Docket No. 5.

At the time of the events alleged therein, Alicea-Flores was PREPA's Executive Director, Oppenheimer was PREPA's Labor Relations Director, and Mendez served as PREPA's Human Resources Director, in addition to occupying a seat as secretary of PREPA's Board of Directors. Id. at pp. 4-5. The complaint alleges that these Defendants were active members of the Popular Democratic Party ("PDP"). Id. In February of 2013, Hernandez-Perez, an affiliate of the PPD, was appointed to the position of Regional Administrator at PREPA's Regional Office in Arecibo, Puerto Rico, after the change in administration following the 2012 General Elections. Id. at p. 8.[5] Also at that time, Figueroa-Jaramillo was the President of the UTIER, while Perez-Soler acted as a union representative. Plaintiffs, who identify themselves as active members of the NPP, allege that the PREPA Defendants conspired among themselves and with the UTIER Defendants to terminate their employment in violation of their constitutional rights.

### *Plaintiffs*

---

[4] Local Rule 56(c) states that a non-movant's opposing statement of material facts "shall admit, deny or qualify the facts supporting the motion for summary judgment," and in so doing, shall support each denial or qualification by particularized record citations. L.Cv.R. 56(c) (D.P.R. 2009). Moreover, facts supported by record citations shall be deemed admitted unless properly controverted. L.Cv.R. 56(e). When considering the Plaintiffs' opposing statements of fact (Docket No. 81), the Court disregarded "conclusory allegations, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas de P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir.2011)(internal citations omitted). In particular, the Court discounted hearsay statements, see e.g. Docket No. 81-9 at ¶ 7, Docket No. 81-13 at ¶ 69, and other purported facts that were either irrelevant or not presented in suitable evidentiary form. See Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir.2006)(stating that once the movant makes a preliminary showing as to the absence of genuinely disputed material facts, "the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue"); Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 223 (1st Cir.1996)(same); see also Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 17 (1st Cir.2007)(stressing that "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment"). Accordingly, unless controverted with record material properly considered at this stage, the Court deemed undisputed the material facts submitted by Defendants in accordance with Fed.R.Civ.P. 56 and Local Rule 56.

[5] The circumstances of Defendant Villafañe's employment with PREPA are unclear. The amended complaint alleges Villafañe is a member of the PDP and that he, too, conspired to remove Plaintiffs from their employment. See id. at p. 6. Plaintiffs also allege that Villafañe "conspired to remove documents from [Soto's] office and create frivolous case against the Plaintiffs." Id.

1. Plaintiff Soto began working for PREPA in 1994, and by 2013 she occupied the position of District Manager of the Commercial Office in Isabela, Puerto Rico (the "Isabela office"). See SUMF at ¶ 1; Docket No. 60-22 at p. 7.

2. Plaintiff Torres began working for PREPA in 1994, and in December of 2011, he was assigned to the position of Supervisor of Technical Services at the Isabela office. SUMF at ¶ 1; Docket No. 60-23 at pp. 11-12.

3. Plaintiff Torres affiliated himself to the group "Energéticos Estadistas" five to ten years after he first began working for PREPA. SUMF at ¶ 37.

4. Plaintiffs acknowledge that political affiliation to a political party is not an employment requisite at PREPA. SUMF at ¶ 36; Docket No. 81 at ¶ 36.

*The Anonymous Tip and Investigation*[6]

5. On or around July 11, 2013, Hernandez received an anonymous phone call urging him to investigate alleged irregularities found in the payroll records of employees working at the Isabela office who were reporting more work hours than was the case. SUMF at ¶ 2.

---

[6] The Court must address several compliance issues when reviewing Plaintiffs' opposition papers. First, Plaintiffs repeatedly deny that an internal investigation was ever conducted. They also contend that the audit report in question does not adhere to the requirements set forth in PREPA's administrative manual for generating internal audit reports. Docket No. 81 at ¶¶ 3-6. Plaintiffs further challenge PREPA's decision to suspend Plaintiffs on the basis of the investigation's results by arguing that in 2011, PREPA's Labor Department issued a "letter of consultation establishing the invalidity of using security logs for any sort of measure of attendance and exit logs for employees." Id. at ¶ 4. In support of their opposing statements, Plaintiffs cite to a myriad of exhibits filed in the Spanish language for which certified English translations have not been provided and, thus, are not part of the record.

It is well-settled then that 'federal litigation in Puerto Rico [must] be conducted in English." Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 88 (1st Cir.2004)(quoting Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004). See 48 U.S.C. § 864(requiring all pleadings and proceedings in the District of Puerto Rico to be conducted in the English language"); L.Cv.R. 5(g)(all documents presented as evidence that are not in the English language must be accompanied by a certified English translation). The English language requirement becomes especially relevant where the Spanish language document or matter is key to the outcome of the case. See Puerto Ricans For Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir.2008)(failure of defendants to provide a translated copy of a critical Puerto Rico Supreme Court opinion on which they relied on for requesting dismissal of suit warranted denial of their motion); Cordero-Soto v. Island Finance, Inc., 418 F.3d 114 (1st Cir.2005)(district court could exclude from consideration litigant's Spanish-language exhibits, where litigant did not ask for leave to file exhibits in Spanish while he obtained necessary translations and did not subsequently present any translations). Consequently, the Court did not consider any of Plaintiffs' Spanish-language exhibits in determining the undisputed facts.

6. After noticing the forewarned inconsistencies, Hernandez requested PREPA's Internal Audit Office to verify the times reported in the employees' Bi-weekly Attendance Reports (payroll records) against the Entrance and Exit Records (Security time logs) of the Isabela office SUMF at ¶¶ 3-5; Docket No. 60-2.

7. On August 5, 2013, Pedro Rodriguez-Cintron, Administrator at PREPA's Internal Audit Office, issued an Audit Report setting forth the results of the investigation. See Docket No. 60-2. The Audit Report confirmed inconsistencies in the payroll records and the Security time logs of 38 employees. SUMF at ¶¶ 5 & 7. It also identified the relevant payroll entries for the months of March, April and May of 2013. See Docket No. 60-2.

### *Plaintiffs' Suspensions*

8. On August 19, 2013, Plaintiffs were summarily suspended from employment with pay pending the results of an informal investigation hearing. To that end, both Soto and Torres received suspension letters with PREPA's allegations against them, which they refused to sign. SUMF at ¶¶ 18 & 21; Docket Nos. 70-3 & 70-9.

9. The letter received by Soto informed her that she was suspended for (a) falsely reporting overtime work (compensatory time) in her Biweekly Attendance Report on March 28, April 16, 24, 25, 26, and 30, and May 1, 2, 3, and 6 of 2013; and (b) allowing employees to use PREPA's official vehicles for personal use. The letter also noted the inconsistencies found when verifying the employees' Biweekly Attendance Reports (payroll records) against the Security time logs that recorded the entry and exit times of employees and the mileage authorization documents in Soto's custody. See Docket No. 70-3 at p. 1.

10. The information available to PREPA at that time revealed that Soto had authorized her employees to report more work hours than was the case. SUMF at ¶ 10.

11. Torres, on the other hand, was suspended for (a) falsely reporting regular work hours and overtime (compensatory time) in his Biweekly Attendance Report on March 21, 25, 26, 27 and 28, April 1, 5, 10, 12, 13, 19, 22 and 25, and May 4, 8, 13, 16 and 18 of 2013; (b) allowing employees under his supervision to report regular work hours and

overtime hours that were not worked; and (c) failing to provide the corresponding mileage authorization documentation for the use of PREPA's official vehicles by employees under his supervision. <u>See</u> Docket No. 70-9 at p. 1.

12. The suspension letters further warned Plaintiffs that they could face disciplinary charges for violating PREPA's Rules of Conduct 1, 17, 24, 27 and 31, and Notes 1 and 3, which sanction: (1) repeated tardiness or negligence in the performance of job duties; (2) misuse of PREPA's property or funds; (3) falsification of documents; (4) obstruction or interruption of PREPA's normal operations; and (5) abandonment of duties during business hours. SUMF at ¶ 19; Docket No. 70-3 at pp. 1-4; Docket No. 70-9 at pp. 1-4.

13. In addition, Plaintiff Torres' suspension letter alleged a first-time violation to Rule of Conduct 3, which prohibits leaving the work place during the workday without prior authorization. SUMF at ¶ 20; Docket No. 70-9 at p. 2.

14. The suspension letters noted that first-time violations to Rules of Conduct 17, 24, 27 and 31 could result in the employees' permanent separation from employment and salary. Docket No. 70-3 at p. 4; Docket No. 70-9 at p. 4.

15. PREPA also suspended those employees whose payroll records and Security time logs reflected time differences of more than 400 minutes. SUMF at ¶ 17. Admittedly, the suspended employees belong to two different political parties in Puerto Rico. SUMF at ¶ 31.

### *Informal Hearings*

16. Plaintiffs were summoned to, and appeared at separate informal investigation hearings on August 22, 2013, at the Arecibo Regional Office, to discuss the allegations against them. SUMF at ¶¶ 22-24; Docket No. 70-3 at p. 4; Docket No. 70-9 at p. 4.

17. During the hearings, Plaintiffs were granted the opportunity to be heard, but were advised to invoke their right not to testify when questioned on the alleged misconduct. Docket No. 70-4 at p. 4; Docket No. 70-10.

*18.* On August 22, 2013, after the hearings, Plaintiffs were suspended without pay and their medical insurance cancelled. SUMF at ¶ 26; Docket No. 70-4 at p. 4; Docket No. 70-10 at p. 4.

### *Investigation Reports*

19. An Investigation Report was issued on August 23, 2013, summarizing the facts and disciplinary norms underlying Plaintiff Soto's suspension. Docket No. 70-6. The Report was discussed with Soto and sent to her via certified mail. SUMF at ¶ 13; Docket No. 70-7.

20. The purpose of the Investigation Report was to determine whether or not Plaintiff Soto violated PREPA's disciplinary standards and, if so, to recommend the appropriate disciplinary sanction. Docket No. 70-6 at p. 1.

21. The Investigation Report states the specific dates in March, April and May of 2013, where Soto reported more work hours than was the case and/or overtime work (compensatory time) that was not performed; the fact that during the same period, employees under Soto's supervision had also reported more work hours than was the case, and that Soto had approved said employees' payroll records; that on March 28, 2013, she authorized employees to leave early and closed the Isabela office before 4:00 PM (end of the regular work day), thus affecting the services provided by said office; and the fact employees at the Isabela office had used PREPA's official vehicles for personal purposes. SUMF at ¶ 12; Docket No. 70-6 at pp. 1-3.

22. The Investigation Report recommended that disciplinary charges be filed against Plaintiff Soto for violation to PREPA's Rules of Conduct 1, 17, 24, 27 and 31, as well as Notes 1 and 3. Docket No. 70-6 at pp. 4-5.

23. Similarly, an Investigation Report was issued on August 22, 2013, summarizing the facts and applicable disciplinary norms underlying Plaintiff Torres' suspension. SUMF at ¶ 14; Docket No. 70-12. The investigation results indeed showed that Torres participated in an alleged fraudulent scheme whereby employees under his supervision and Torres himself logged more work hours than was the case. Id. Torres also authorized an employee to perform work outside of his regular work schedule without supervision and report overtime that was not worked. Id. at p. 3.

### *Disciplinary Charges*[7]

---

[7] The letters sent to Plaintiffs were signed by Eugenio Colon-Padilla, Interim Chief of PREPA's Personnel Division. Docket No. 70-8 at p. 5; Docket No. 70-13 at p. 5.

24. On August 23, 2013, PREPA sent Soto formal notification of the disciplinary charges against her for violation to PREPA's Rules of Conduct 1, 17, 24, 27 and 31, as well as Notes 1 and 3, and her right to request an administrative hearing with PREPA's Labor Relations Division within fifteen business days from the receipt of notification. See Docket No. 70-8.

25. The letter sent on August 23, 2013, informed Plaintiff Soto that the penalty for first violations to Rule of Conduct 17 (misappropriation, misuse or intentional mismanagement of public property or funds) could result in permanent suspension from employment. Id. at pp. 1-3.

26. Also on August 23, 2013, PREPA sent Torres formal notification of the disciplinary charges against him for violation to PREPA's Rules of Conduct 1, 3, 17, 24, 27 and 31, as well as Notes 1 and 3, and his right to request an administrative hearing with PREPA's Labor Relations Division within fifteen business days from the receipt of the notification. Docket No. 70-13.

27. That letter also informed Plaintiff Torres that first-time violations to Rules of Conduct 17, 24 and 31 could result in employment termination. Docket No. 70-13.

28. The letters sent on August 23, 2013, show that in bringing disciplinary charges against Plaintiffs, PREPA took into consideration statements made by several employees regarding Plaintiffs' knowledge and participation in the events leading up to their suspension. See Docket Nos. 70-8 and 70-13.

### Formal Administrative Proceedings

29. At Plaintiffs' request, formal administrative proceedings ensued. See Docket No. 70-16 at p. 1. A formal administrative hearing was held, with Official Examiner Wilfredo Alicea Lopez ("official examiner") presiding. SUMF at ¶ 28.

30. Pending adjudication on the merits, Plaintiffs were reinstated to their positions at PREPA and recovered unpaid salaries. Soto recovered $43,070.63 and Soto, $32,833.13. SUMF at ¶ 29.

31. On August 11, 2015, the Official Examiner issued a Final Resolution finding that Plaintiffs' actions violated PREPA's disciplinary norms and ordering their permanent separation from employment and salary. Docket No. 70-16.

### *Evidence of Political Affiliation*

32. Plaintiff Soto was never asked or told her political affiliation to Hernandez-Perez, Mendez, Oppenheimer, Villafañe or Alicea-Flores. Docket No. 60-22 at pp. 36, 41, 43-46.

33. Plaintiff Soto has no knowledge of Perez-Soler's motive for instructing UTIER employees testify against her, or if Perez-Soler and Figueroa-Jaramillo even met with the PREPA Defendants. Docket No. 60-22 at pp. 30-31.

34. Plaintiff Soto admits that at the time of her suspension on August 19, 2013, the UTIER employees who had also been suspended had not provided any statements whatsoever. Id. at p. 34.

35. Plaintiff Torres asserts that employees' political affiliation is a matter of general knowledge at PREPA. Docket No. 60-24 at p. 26. In fact, he assumed that Defendants knew his political affiliation because he belongs to "Energéticos Estadistas," he has assisted to political activities in the past and because his family members are also political activists. SUMF at ¶ 38.

36. According to Plaintiff Torres, Hernandez-Perez was aware of his political affiliation because they had worked together. Docket No. 60-24 at p. 26. Similarly, Plaintiff Torres claims that Villafañe is aware of his political affiliation because they "work together" and because "it's known." Admittedly, however, Villafañe never asked Plaintiff Torres about his political affiliation. Id. at pp. 31-32

37. Torres does not know if or how Mendez, Oppenheimer or Alicea-Flores were aware of his political affiliation at the time of the events alleged in the amended complaint. Id. at p. 29-30.[8]

38. As for the PREPA Defendants' participation in the decision to suspend him, Plaintiff Torres points to Alicea-Flores', Oppenheimer's and Mendez' "leadership" positions at PREPA.[9] See id. pp. 27-30.

---

[8] The Court quotes the following portions of Plaintiff Torres' deposition testimony (Docket No. 60-24 at pp. 29-30):

    Q    You don't know if you ever told them your political affiliation?
    A    No.
    Q    Did they ever ask you your political affiliation?
    A    No, I can't recall.
    Q    You can't recall?
    A    I can't say for sure.

[9] With respect to Mendez, Torres stated that "since she is the head of personnel, I have to assume that she helped." Id. at p. 28-29.

39. As for the UTIER Defendants, Plaintiff Torres admitted that at the time of the events alleged in the amended complaint, they were not officers or directors of PREPA. Id. at pp. 36-37. He was unable to explain if or how the UTIER Defendants partook in the decision to suspend him because of his political affiliation. Id.

### III.   DISCUSSION

Plaintiffs allege that Defendants conspired to deprive them of their civil rights pursuant to 42 U.S.C. § 1983 by removing them from their employment in violation of their rights under the First, Fifth and Fourteenth Amendments. See Docket No. 5. The Court addresses each claim in turn.

### A.  Section 1983

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924, 102 S.Ct. 2744 (1982) (internal quotations omitted). To prevail in a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.2005) (quoting Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Section 1983 claims require that a plaintiff establish three elements for liability to ensue: deprivation of a right, a causal connection between the actor and the deprivation, and state action. See Sanchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional,

grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." <u>Concepcion v. Municipality of Gurabo</u>, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a plaintiff must link each particular defendant to the alleged violation of federal rights. <u>See</u> <u>González—Piña v. Rodríguez</u>, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." <u>Pinto v. Nettleship</u>, 737 F.2d 130, 133 (1st Cir.1984).

### B.  First Amendment

As previously noted, Plaintiffs bring suit for the violation of their constitutional rights under the First Amendment, which "insulates public employees who hold non-policymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." <u>Bergeron v. Cabral</u>, 560 F.3d 1, 7 (1st Cir.2009)(citing <u>Rutan v. Repub. Party of Ill.</u>, 497 U.S. 62, 74-76 (1990)). "The First Amendment therefore bars government officials from taking adverse employment action on the basis of a person's political affiliation, 'unless political affiliation is an appropriate requirement for the position.'" <u>Garcia-Gonzalez v. Puig-Morales</u>, 761 F.3d 81, 92 (1st Cir.2014)(quoting <u>Méndez-Aponte v. Bonilla</u>, 645 F.3d 60, 64 (1st Cir.2011). This means that a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." <u>Galloza v. Foy</u>, 389 F.3d 26, 28 (1st Cir.2004)(citation omitted).

In their motion for summary judgment, the PREPA Defendants request the dismissal of Plaintiffs' First Amendment claims. These Defendants argue that Plaintiffs have not adduced sufficient evidence regarding Defendants' actual knowledge of their political affiliation or that their political affiliation was a substantial or motivating factor for their suspension and eventual termination. <u>See</u> Docket No. 59 at p. 16. To establish a political discrimination claim, "the workers must show that: (1) they and the defendant have 'opposing political affiliations,' (2) the defendants were aware of the workers' political affiliations, (3) an 'adverse employment action' (e.g., an employment termination) occurred, and (4) 'political affiliation was a substantial or motivating factor for

the adverse employment action.'" Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 5 (1st Cir.2015)(citation omitted)('Ocasio-Hernandez II"). Here, Plaintiffs have failed to so.

To begin, it must be noted that the record lacks evidence that Plaintiffs and all of the individual Defendants were militants of opposing political parties, and in their opposition Plaintiffs point to none.[10] That PREPA officials' political affiliation is a matter of "common" or general knowledge via the employee grapevine or that such affiliation may be inferred from the year in which some of the officials are appointed will not suffice. See e.g. Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir.1994)("Without more, a nonmoving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment.").[11]

On the other hand, Plaintiffs "need not produce direct evidence of discriminatory treatment (a so-called 'smoking gun') to establish a prima facie case of politically discriminatory suspension or termination." Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir.2006). They must, however, offer specific facts "to take the asserted claim out of the realm of speculative, general allegations" of each Defendants' knowledge of their political affiliation. Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 85 (1st Cir.2004). Id. at 86. Here, Plaintiffs proffer only their testimony as proof that Defendants were aware of their political affiliation to the NPP. Yet, a closer look at this evidence shows that each Plaintiffs declared under oath that they were never asked or told any of the Defendants their political affiliation.[12] Indeed, neither Plaintiff

---

[10] Again, in conducting an independent review of the record, the Court found that during his deposition, Oppenheimer admitted that he is, in fact, affiliated to the PDP. Docket No. 60-25 at pp. 47-48. That testimony also shows that Oppenheimer did not have knowledge of Plaintiffs' political affiliation at the time of the events in question.

[11] There is no doubt that, historically, PREPA employees are exposed to a "politically-charged" atmosphere. But Plaintiffs must point to some admissible evidence before the Court can draw any reasonable inference in their favor. Generally, "a politically charged atmosphere ..., without more, provide[s] no basis for a reasonable inference that defendant['s] employment decisions about plaintiff were tainted by [her] disregard of plaintiff's first amendment rights." LaRou v. Ridlon, 98 F.3d 659, 661-62 (1st Cir.1996)(quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir.1990)).

[12] The Court nonetheless finds that Plaintiff Soto has described with specificity a number of different ways in which Hernandez-Perez became aware of her political affiliation, e.g. that they worked in the same region at a time she occupied a trust position. See id. at p. 36. However, because Plaintiffs do not point to any evidence

could describe with any specificity how, if at all, the PREPA officials became aware of such fact. There are no definite indications of temporally close activities, conversations or statements made by any of the Defendants – and of which Plaintiffs' have personal knowledge of – which intimate a discriminatory or retaliatory agenda against NPP employees. See Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 23 (1st Cir.2010)(finding no evidentiary basis for jury to reasonably conclude that plaintiff was subject to political discrimination based on testimony that government agency was highly politicized, that "political backing" from members of the legislature was an important factor in agency appointments, and that decision-maker spoke about political activities on at least one work-related occasion); but see Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 44 (1st Cir.2007)(noting that reasonably jury could conclude that plaintiffs' political affiliation was known to defendants based on testimony that plaintiff spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria), and Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir.2006)(holding that reasonably jury could conclude that plaintiffs' political affiliation was sufficiently well-known that the defendants had knowledge of it given evidence of relatively small workplace).

   Moreover, Plaintiffs have not presented any form of acceptable evidence at this stage to establish each Defendant's involvement in the challenged employment decision. "Even when it is clear that the defendant has a political agenda or harbors political biases, it remains the plaintiff's burden to produce evidence of a causal connection between those biases and the challenged employment action." Mercado-Berrios, 611 F.3d at 23. Even after examining the evidence in light most favorable to Plaintiffs, the Court finds that it is not sufficiently probative to support a finding that their political affiliation was a substantial or motivating factor in the employer's decision. In their opposition, Plaintiffs argue that they "have enough evidence to prove that the actions by [Defendants] were not justified, and thus politically motivated." Docket No. 80 at p. 6. However, the undisputed facts show that Plaintiffs were suspended after an initial investigation revealed inconsistencies in

---

establishing that Hernandez-Perez is the responsible defendant for the employment decisions in question, the claims against him must be dismissed.

the Plaintiffs' time records, as well as the time records of employees under their supervision. At Plaintiffs' request, a formal administrative proceeding ensued that culminated in adjudication on the merits of their disciplinary charges. As a result thereof, the official examiner ordered Plaintiffs' permanent separation from employment. The Court finds that no reasonable inference of a politically based discriminatory animus can be drawn on these facts. See Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 216 (D.P.R.2009), aff'd sub nom. Del Toro Pacheco v. Pereira, 633 F.3d 57 (1st Cir.2011)(dismissing plaintiff's political discrimination claim where the evidence demonstrated that plaintiff was discharged as a result of an administrative investigation that ensued after a criminal complaint was filed against him). Insofar as Plaintiffs have failed to show that political affiliation was a substantial factor in the challenged employment actions, their claims must be dismissed.

Consequently, the Defendants' motion for summary judgment as to Plaintiffs' political discrimination claims is **GRANTED,** and Plaintiffs' claims **DISMISSED WITH PREJUDICE.**

### C.  Fourteenth Amendment

Plaintiffs allege that as career employees, they had a property interest in their employment of which they could not be derived without due process. See Docket No. 5 at pp. 14-15. They also raise due process claims based on Defendants' alleged refusal to consider exculpatory evidence, as well as the use of statements made by UTIER employees against Plaintiffs to regain their own employment. See id.

To establish a procedural due process violation, a plaintiff must, first, identify a protected liberty or property interest and, second, that the defendant, acting under color of state law, deprived him or her of that interest without constitutionally adequate process. See Hightower v. City of Boston, 822 F. Supp. 2d 38, 56 (D. Mass. 2011), aff'd, 693 F.3d 61 (1st Cir.2012)(citing González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir.2011). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir.2000)(citing Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 263 (1st Cir.1987). "It is well

established, both in Puerto Rico and in federal law, that a person has secured a property right in his employment if he has an expectation of continuity in said employment." Quiles Rodriguez v. Calderon, 172 F.Supp.2d 334, 344 (D.P.R.2001).

In Puerto Rico, public employees fall generally in two categories: those who hold "career" positions and those who hold "trust" or "confidence" positions. See Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir.2009)(citing Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 3 n. 1 (1st Cir.2000)). On the one hand, "Puerto Rico 'trust' employees participate in policymaking and can be hired and fired on political grounds." Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 110 (1st Cir.2014)(citing Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 7 (1st Cir.2010)). "Career employees, on the other hand, hold 'permanent' positions." Costa-Urena, 590 F.3d at 22 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 24 n. 2 (1st Cir.2008)). As such, these employees "may only be removed for cause and after certain procedures are followed." Id. (citations omitted).

The First Circuit has explained that career employees are entitled to the protections of the First and Fourteenth Amendments. See id. at 22-23(citing Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 79-80 (1st Cir.2006)("The First Amendment protects the right of public career employees .... to engage in political activities without fear of adverse employment actions."); Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir.2006)(recognizing that under Puerto Rico law, career employees have a property interest in their continued employment that is protected by the Due Process Clause of the Fourteenth Amendment)). Therefore, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir.2011)(internal quotations and citations omitted).

In the case at hand, PREPA Defendants request dismissal of Plaintiffs' procedural due process claims under the Fourteenth Amendment. These Defendants first argue that the Fourteenth Amendment does not require a pre-suspension hearing in cases where a career employee is

suspended with pay. See Docket No. 59 at pp. 13-14. They also assert that Plaintiffs were afforded minimum due process prior to their suspension from employment and salary on August 22, 2013. See id. In their opposition, Plaintiffs first anchor their procedural due process claims on Defendants' use of allegedly coerced testimony from the UTIER employees to remove Soto and Torres from their employment. See Docket No. 80. Plaintiffs, for example, assert that the investigation reports issued on August 23, 2013, that is, after the hearings held on August 22, 2013, were based on the statements made by UTIER employees against Soto and Torres. Plaintiffs also challenge the adequacy of the administrative proceedings by arguing that PREPA designated Co-Defendant Hernandez-Perez "to investigate, formulate charges, suspend from pay make investigation reports, thus eliminating any transparency in the process...." Id. at p. 14. Plaintiffs have nevertheless failed to point to any admissible evidence in order to substantiate these arguments. At any rate, and although in the context of First Amendment claims, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review a personnel decision taken by a public entity in reaction to [] employees' behavior." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 600 (2008)(alteration in original).

    In their opposition, Plaintiffs attempt to evince their procedural due process claims with the final resolution issued by PREPA's official examiner in which he ratified a previous interlocutory resolution determining that Plaintiffs had been suspended without pay in violation of their due process rights. The Federal Rules of Evidence provide that courts may only take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because such facts are (1) generally known within the territorial jurisdiction, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). "Absent unusual circumstances, a court may not take judicial notice of the findings of fact contained in another court's order...." MVM Inc. v. Rodriguez, 568 F. Supp. 2d 158, 164 (D.P.R. 2008) (citing Nadherny v. Roseland Prop. Co., 390 F.3d 44, 51-52 (1st Cir. 2004)(citing Int'l Star Class Yacht Racing Ass'n, 146 F.3d 66, 70-71 (2d Cir. 1998))). Nevertheless, the Court is not prohibited from taking "judicial notice of the fact that another proceeding took place, or

of certain other undisputable aspects of those proceedings. Thus, courts may take judicial notice of another court's order for the limited purpose of recognizing the judicial act or the subject matter of the litigation." MVM Inc., 568 F. Supp. 2d at 164 (citing United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994)). Applying this caselaw, the Court finds that it may take judicial notice of the fact that the Official Examiner issued a final resolution on August 11, 2015, wherein he ratified a prior ruling and, based on the facts he deemed proven, decreed Plaintiffs' permanent separation from employment and salary. See Docket No. 70-16. Having so ruled, the Court rejects Plaintiffs' invitation to adopt the administrative judge's findings of fact or legal conclusions in the order provisionally reinstating the employees, particularly those pertaining to the alleged due process violations. We thus move on to examine Plaintiffs' claims in light of the evidence on record before this Court.

It is undisputed that on August 19, 2013, Plaintiffs were summarily suspended with pay pending the results of an informal investigation hearing. On that same date, Plaintiffs received letters with PREPA's allegations against them. Also, Plaintiffs were summoned to, and appeared at separate informal hearings held on August 22, 2013, to discuss aforesaid allegations. Indeed, during those hearings, Plaintiffs were given the opportunity to be heard, but were advised to invoke their right not to testify when questioned on the alleged misconduct. After the informal hearings, Plaintiffs were suspended with pay and their medical insurance cancelled.[13] Afterwards, both Soto and Torres received formal suspension letters that informing them of PREPA's decision to bring disciplinary charges against them and of their right to request in writing administrative hearings with their employer within fifteen days. At Plaintiffs' request, formal administrative proceedings ensued which culminated in the adjudication on the merits of the disciplinary charges against them. Pending final resolution of the formal proceedings, Plaintiffs were provisionally reinstated to their positions at PREPA and

---

[13] For the sake of clarity, the Court notes that when Plaintiffs were first suspended on August 19, 2013, the suspension was with pay. Later that month, after the informal investigation hearings were held, Plaintiffs were suspended without pay. Formal administrative proceedings followed. Then, on May of 2014, the Plaintiffs were provisionally reinstated to their managerial positions at PREPA and became entitled to recover lost wages from the date of their suspension without pay until their reinstatement.

reimbursed all unpaid earnings that were withheld as a result of their suspension without pay.[14] The evidence on record shows that Soto was reimbursed the amount of $43,070.63, and Torres, $32,822.13. See Docket Nos. 70-17 & 7-18.

It is worth noting that "[n]o rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Gonzalez-Droz, 660 F.3d at 13 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972)). Nonetheless, based on the undisputed facts, the Court finds that the pre-termination events provided Plaintiffs with a constitutionally-adequate process. See Feliciano-Angulo v. Rivera-Cruz, 858 F.3d 43-44 (1st Cir.1988)(holding that due process does not require an irreducible combination of pre and post-termination hearings). Accordingly, Plaintiffs procedural Due Process claims under the Fourteenth Amendment are hereby **DISMISSED WITH PREJUDICE.**[15]

### D.  Civil Rights Conspiracy

A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another,' and 'an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)(citations omitted). "To establish a conspiracy claim under [Section] 1983, plaintiff must 'prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.'" Rivera-Carrero v. Rey-Hernández, Civil No. 04-1925, 2006 WL 572349, at *2 (D.P.R.2009)(citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)). While a "'conspiracy is a matter of inference,' summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations." Estate of Bennett v. Wainwright, 548

---

[14] As previously noted, Plaintiffs were suspended without pay after the informal investigation hearing on August 22, 2013.

[15] Insofar as Plaintiffs failed to develop or substantiate their allegations regarding Defendants' refusal to consider exculpatory evidence at this stage, the Court deems those allegations waived. See U.S. v. Zannino, 825 F.2d 1, 17 (1st Cir.1990)("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

F.3d 155, 178 (1st Cir.2008)(affirming the district court's grant of summary judgment where the "plaintiffs presented no evidence, either direct or circumstantial of an agreement among defendants from which a reasonable jury could have inferred a conspiracy among them" to deprive plaintiffs of their civil rights)).

In the instant case, Plaintiffs allege that the PREPA Defendants conspired with the UTIER Defendants to deprive Soto and Torres of their rights under First and Fourteenth Amendments. See Docket No. 5 at pp. 5-6. Specifically, Plaintiffs aver that Figueroa-Jaramillo and Perez-Soler coerced UTIER employees to provide false statements against Soto and Torres to regain their own employment. See id. at pp. 13-14.

As previously noted, a Section 1983 plaintiff must show not only that "some person deprived him of a federal right," but also that "such person 'acted under color of state or territorial law.'" Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir.2014)(quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). "To act under color of state law for [Section] 1983 purposes does not require that the defendant be an officer of the state." Dennis v. Sparks, 449 U.S. 24, 27 (1980). However, the alleged misconduct resulting in a deprivation of a plaintiff's rights must be fairly attributable to the State. See Lugar v. Edmondson Oil Co., Inc., 547 U.S. 922, 937 (1982). "Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." Grapentine, 755 F.3d at 31 (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(internal quotations omitted).

A private actor's conduct can be fairly attributable to the State if the facts and circumstances of the case satisfy one of three tests: the public function test, the state compulsion test, or the joint action/nexus test. See Grapentine, 755 F.3d at 32; Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir.2008). Insofar as Plaintiffs allege that the UTIER Defendants conspired and worked together with the PREPA Defendants to discriminate against them, the Court would analyze the relevant facts under the joint action/nexus test. But we need not reach such analysis. As pointed out by the UTIER Defendants, Plaintiffs have not proffered any evidence to establish that

the alleged misconduct of Figueroa-Jaramillo and Perez-Soler, both private actors, is fairly attributable the state. See Docket No. 63 at p. 14.

Indeed, Plaintiffs have not set forth any specific facts from which a jury could reasonably conclude that the UTIER Defendants were decision-makers with respect to Plaintiffs' jobs or that they actually partook in the decision to suspend Plaintiffs. Further, the record before this Court is wanting in evidence showing that the UTIER employees ever testified against Plaintiffs, let alone that such testimony was "coerced" and "provided under duress" in order to be able to discipline Plaintiffs. See Docket No. 80 at p. 5. While it is undisputed that Figueroa-Jaramillo and Perez-Soler met with PREPA officials and eventually reached an agreement to reinstate the UTIER employees that had been suspended under the condition that they sign sworn statements against Plaintiffs, such evidence is insufficient to establish a colorable conspiracy claim pursuant to Section 1983.

In light of the foregoing, the UTIER Defendants' motion for summary judgment (Docket No. 63) is hereby **GRANTED**. As such, Plaintiffs' claims against these Defendants are **DISMISSED WITH PREJUDICE.**

**E.    Supplemental Puerto Rico Law Claims**

Plaintiffs' remaining claims are grounded on Puerto Rico law. Defendants have requested the dismissal of these claims. Since the federal claims have been dismissed and no other grounds for jurisdiction exist, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)(explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(stating "if the federal claims are dismissed before trial,...the state law claims should be dismissed as well."). Accordingly, Plaintiffs' claims brought pursuant to Commonwealth law are hereby **DISMISSED WITHOUT PREJUDICE.**

## IV.   CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendants' motions for summary judgment (Docket Nos. 59 & 63). Accordingly, Plaintiffs' claims of political discrimation and procedural due process under the First and Fourteenth Amendments, respectively, are hereby **DISMISSED WITH PREJUDICE**. The Plaintiffs' claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, July 27, 2016.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**